UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

JOSEPH JACK MINC,
and KAREN ESTHER MINC,

                    Debtors.

_____/

Case No. 24-48965

Chapter 7

Judge Thomas J. Tucker

**OPINION REGARDING THE CHAPTER 7 TRUSTEE'S
OBJECTION TO EXEMPTIONS**

## I. Introduction

This Chapter 7 case is before the Court on the Trustee's objection to several of the

Debtors' claimed exemptions (Docket # 70, the "Exemption Objections"). This requires the

Court to interpret and apply several exemption statutes, including (1) provisions in the Michigan

bankruptcy exemption statute, Mich. Comp. Laws § 600.5451; (2) a Michigan statute that

exempts certain life insurance benefits, Mich. Comp. Laws § 500.2207; and (3) the federal

exemption statute that protects social security benefits, 42 U.S.C. § 407.

The Trustee objects to the Debtors' effort to exempt five assets. The Court has

considered the briefs and exhibits filed by the Trustee and by the Debtors, the oral arguments

made by counsel for the parties during a hearing held on May 28, 2025, and the supplemental

briefs filed by the parties after the hearing. For the reasons stated below, the Court will sustain

the Trustee's Exemption Objections in part, and overrule them in part.

## II. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and E.D.Mich. LR 83.50(a).  This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## III.  Discussion

The Debtors filed their joint voluntary bankruptcy petition under Chapter 7 on September 19, 2024.  The Debtors each filed a Schedule C that day, electing to claim exemptions under state law and non-bankruptcy federal law, as permitted by 11 U.S.C. § 522(b)(3).

### A.  Some general principles about exemptions

Initially, the Court reiterates the following general principles regarding exemptions, which the Court has stated in prior cases:

> The Trustee . . . bear[s] the burden of proving that the Debtor's claimed exemptions . . . "are not properly claimed."  *See* Fed. R. Bankr. P. 4003(c); *see also In re Demeter*, 478 B.R. 281, 286 (Bankr. E.D. Mich. 2012); *In re John*, 459 B.R. 684, 689 (Bankr. E.D. Mich. 2011).  And the Court must construe exemptions liberally, in favor of the Debtor.  *See Demeter*, 478 B.R. at 286; *In re Hanh Hieu Dang*, 473 B.R. 218, 221 (Bankr. W.D. Mich.  2012) ("Exemptions are to be liberally construed in favor of a debtor.") (citing *Menninger v. Schramm* (*In re Schramm*), 431 B.R. 397, 400 (B.A.P. 6th Cir. 2010) and Fed. R. Bankr. P. 4003(c)).
>
> The Court must determine Debtor's claimed exemptions as of the date he filed his bankruptcy petition.  *See Lawless v. Newton* (*In re Lawless*), 591 F. App'x 415, 417 (6th Cir. 2014); *Demeter*, 478 B.R. at 286; *Hanh Hieu Dang*, 473 B.R. at 221 ("Exemptions are determined as of the filing date."); *In re Buick*, 237 B.R. 607, 609 (Bankr. W.D. Pa. 1999) and cases cited therein (holding that a debtor's entitlement to an exemption under § 522(d)(1) is "determined as of the filing date of . . . [a bankruptcy] petition").

2

*In re Sharkey*, 563 B.R. 655, 659 (Bankr. E.D. Mich. 2017) (quoting *In re Kizer*, 539 B.R. 316, 319 (Bankr. E.D. Mich. 2015)); *see also In re Wylie*, 630 B.R. 68, 71 (Bankr. E.D. Mich. 2021), *aff'd. sub nom. Wylie v. Miller*, 650 B.R. 504 (E.D. Mich. 2022) (same).

## B. The exemption disputes in this case

The Court will separately discuss the Debtors' several exemption claims that are in dispute.

### 1. The security deposit and prepaid rent for the Aldingbrook property, and the "provisions and fuel" exemption

The Debtors listed property on line 22 of Schedule A/B that they described as "Security deposit on rental unit: Aldingbrooke," valued at $4,003.50, and "Prepaid rent: Aldingbrooke," valued at $5,409.80.[1]  The name "Aldingbrooke" appears to refer to residential real property leased by the Debtors, with a landlord creditor named "Aldingbrooke Terraces and Townhomes" in West Bloomfield, Michigan.[2]  In the Schedule Cs filed by the Debtors, they each claim one-half the value of these two assets as exempt, based on Mich. Comp. Laws § 600.5451(1)(b).[3] That section exempts "[p]rovisions and fuel for comfortable subsistence of each householder and his or her family for 6 months."

---

[1]  Schedule A/B, line 22 (Docket # 1) at pdf p. 17.

[2]  *See* Schedule G, line 2.1 (Docket # 1) at pdf p. 67 (listing "Residence Contract to be ASSUMED"); Statement of Intentions (Docket # 1) at pdf p. 93 (listing lease to be assumed).

[3]  *See* Docket # 1 at pdf pp. 24-25 (Joseph Minc Schedule C), pdf p. 28 (Karen Minc Schedule C).

3

The Trustee argues that neither the security deposit nor the prepaid rent is "provisions" or "fuel" within the meaning of § 600.5451(1)(b). The Debtors argue that these assets are both "provisions" of the type described in the statute.

The meaning of "provisions" in this statute is the subject of a split of authority in the cases from this district and the Western District of Michigan. At least two of the bankruptcy judges in this district, including the undersigned judge, have interpreted the word "provisions" in a way that favors the Trustee's position. But at least two other bankruptcy judges in this district have interpreted this word in a way that favors the Debtors' position.

The undersigned judge previously made a ruling in the case of *In re Davenport*, Case No. 20-51539, on February 24, 2021. That ruling was in the form of an oral bench opinion, a transcript of which is on file in the *Davenport* case at Docket # 66, and an order filed on February 21, 2021, at Docket # 49.

In the *Davenport* case, this Court ruled that the "provisions and fuel" exemption in § 600.5451(1)(b) "does not . . . cover money, cash, bank accounts, funds in bank accounts, or any right to receive money such as a right to an income tax refund[,]" and that this is "unambiguously so."[4] After making this ruling in the *Davenport* case, the undersigned judge has not deviated from this position in any later cases.

The rulings by other bankruptcy judges in this district, and the split of authority that they reflect, are described in detail in a published case from the bankruptcy court in the Western District of Michigan, *In re Sustaita*, 631 B.R. 403, 410-11 (Bankr. W.D. Mich. 2021) (describing *In re Richardson*, 621 B.R. 413 (Bankr. E.D. Mich. 2020), *aff'd. sub nom. Corcoran v.*

---

[4] *Davenport* bench opinion transcript at 11, 16.

*Richardson*, 596 Fed. Supp. 3d 896 (E.D. Mich. 2022), *In re Thibaudeau*, No. 19-210006, 2019

WL 6125311 (Bankr. E.D. Mich. Nov. 18, 2019), and the bench opinion ruling in *In re Barlow*,

Case No. 17-48802 (Bankr. E.D. Mich. Aug. 29, 2017)).[5]

After considering the three bankruptcy court cases from this district just mentioned, and

after an extensive discussion of the issue, the bankruptcy court for the Western District of

Michigan in the *Sustaita* case held that a debtor's checking account and savings account,

including the funds on deposit there, were not "provisions" that could be exempted under Mich.

Comp. Laws § 600.5451(1)(b).  *See Sustaita*, 631 B.R. at 404, 406-16.  In reaching that

conclusion, the *Sustaita* court thoroughly discussed the long history, under Michigan exemption

law, of the "provisions and fuel" exemption,[6] dictionary definitions of the word "provisions," and

relevant principles of statutory interpretation.  The court held that "provisions" in this statute

unambiguously means "a supply of food, victuals, and materials" for the debtor's subsistence,

and does not include "depository accounts or money."  *See id.* at 414 (citations omitted).

The Court finds the detailed reasoning and holding of *Sustaita* persuasive.  The Court

also finds it telling that, as noted in *Thibaudeau*, when the Michigan Legislature adopted the

Michigan bankruptcy exemption statute in 2004, it not only included the "provisions and fuel"

exemption, but also included in the same statutory section a different exemption that expressly

---

[5]  Of these three cases, the *Richardson* case and the *Barlow* case favor the Debtors' position, while the *Thibaudeau* case favors the Trustee's position.

[6]  As *Sustaita* described in detail, the "provisions and fuel" exemption has appeared in Michigan exemption statutes continuously since 1842, and today it appears in both the Michigan bankruptcy-specific exemption statute, Mich. Comp. Laws § 600.5451(1)(b), which was first enacted in 2004, and the general Michigan exemption statute, Mich. Comp. Laws § 600.6023(1)(a).  *See Sustaita*, 631 B.R. at 407-10.

5

applies to certain "[m]oney." *See* Mich. Comp. Laws § 600.5451(1)(j).[7] As *Thibaudeau* pointed

out, "the Michigan Legislature knew how to include the word 'money' in subsection (j) and ha[d]

the absolute ability and right to include the same language in subsection (b), but chose not to do

so." *Thibaudeau*, 2019 WL 6125311, at *2.

Consistent with its previous ruling in the *Davenport* case, this Court agrees with the

holdings in *Sustaita* and *Thibaudeau*, and respectfully disagrees with the contrary cases,

*Richardson* and *Barlow*.[8]

As a result, the Court must disallow the Debtors' claimed exemptions in the prepaid rent

and the security deposit. Those assets are not "provisions" (nor are they "fuel") within the

meaning of Mich. Comp. Laws § 600.5451(1)(b). Each of those assets is, at most, a conditional

right to payment from the lessor under the Debtors' residential lease.[9] Such a right to payment is

---

[7] Section 600.5451(1)(j) exempts:

> Money or other benefits paid, provided, allowed to be paid or provided,
> or allowed, by a stock or mutual life, health, or casualty insurance
> company because of the disability due to injury or sickness of an insured
> person, whether the debt or liability of the insured person or beneficiary
> was incurred before or after the accrual of benefits under the insurance
> policy or contract, except that this exemption does not apply to actions
> to recover for necessities contracted for after the accrual of the benefits.

Mich. Comp. Laws § 600.5451(1)(j).

[8] The Court notes that one of those contrary cases is the district court decision that affirmed the
bankruptcy court's decision in the *Richardson* case. *See Corcoran v. Richardson*, 596 Fed. Supp. 3d 896
(E.D. Mich. 2022). While this Court has carefully considered that district court decision, the Court
respectfully disagrees with it. And this Court is not bound by that district court decision, as a matter of
*stare decisis*. *See In re Meda*, 634 B.R. 946, 949 n.3 (Bankr. E.D. Mich. 2021) and cases cited therein.

[9] The Debtors have argued, for reasons that are not necessary to discuss at this time, that the
prepaid rent and the security deposit should not even be considered property of the bankruptcy estate. If
that is true, of course, it would be another reason why the Debtors could not exempt the assets, because
bankruptcy debtors can only exempt "property of the estate." *See* 11 U.S.C. § 522(b)(1). But the
Debtors listed these as assets in their Schedule A/B, and claimed an exemption in them in the Schedule C

no more a "provision" than is a debtor's bank account or a debtor's right to a tax refund, or any other right to payment that a debtor has.

For these reasons, the Court will enter an order sustaining the Trustee's objection to these claimed exemptions, and disallowing the exemptions.

## 2. The petition date balance in the Debtor Karen Minc's Chase checking account no. 1330

The Debtors listed property on line 17 of Schedule A/B ("Deposits of money") that they described as "Chase - Deposits are solely from Social Security benefits. Account Number: 1330" valued in the amount of $37,789.46 (the "Chase Account").[10] It is undisputed that this bank account is owned solely by the Debtor Karen Minc, and in her Schedule C, she claimed that the entire $37,789.46 amount in this account is exempt under 42 U.S.C. § 407.[11] For many months, Karen Minc has been receiving monthly social security benefits, which were direct-deposited into her Chase Account. She alleges that the entire balance of this account, as of the petition date, was the result of such social security benefit deposits.

The Trustee concedes that under 42 U.S.C. § 407 this bank account is either exempt, or not part of the bankruptcy estate, to the extent the account consists of deposits of social security benefits. That statute provides, in pertinent part:

> The right of any person to any future payment under this
> subchapter shall not be transferable or assignable, at law or in
> equity, and none of the moneys paid or payable or rights existing

---

each Debtor filed. Under the circumstances, the Court does not need to make a ruling, at this time, as to the extent to which these non-exempt assets are property of the estate that may be recovered by the Trustee. The Trustee does not yet seek such relief.

[10] Schedule A/B, line 17.1 (Docket # 1) at pdf p. 15.

[11] Karen Minc Schedule C (Docket # 1) at pdf p. 27.

7

under this subchapter shall be subject to execution, levy,
attachment, garnishment, or other legal process, or to the operation
of any bankruptcy or insolvency law.

42 U.S.C. § 407(a). The Trustee alleges, however, that the balance in the Chase Account

includes not only deposits of social security benefits, but also deposits from other sources, such

that the account in part is not exempt.

The parties agree that because Karen Minc commingled social security funds in the Chase

Account with funds paid from other sources, it is necessary to perform a tracing analysis, to

determine how much of the account balance consisted of social security funds as of the petition

date. *See, e.g., In re Lichtenberger*, 337 B.R. 322, 324 (Bankr. C.D. Ill. 2006) (citations

omitted). "Social Security benefits that are reasonably traceable retain their exemption, even if

commingled with non-exempt funds in the same bank account." *Id.*

The parties also agree that a "FIFO" (first in, first out) accounting method should be used

to perform this tracing. The Court agrees that of the various possible tracing methods,[12] the FIFO

approach is appropriate in this case. *See Lichtenberger*, 337 B.R. at 324-26; *In re Tydings*, No.

19-20889, 2020 WL 1510025, at *4 (Bankr. W.D. Mo. March 27, 2020), *aff'd.*, No. 2:20-cv-

---

[12] Before choosing to use the FIFO method, the court in *Lichtenberger* listed and discussed four
methods:

> There are four methods that courts routinely employ in tracing
> funds: (i) the lowest intermediate balance approach, (ii) the last-in,
> first-out approach, (iii) the pro-rata approach, and (iv) the first-in, first
> out approach. Use of the different approaches yields different results.

*Lichtenberger*, 337 B.R. at 324 (citations omitted); *see also In re Tydings*, No. 19-20889, 2020 WL
1510025, at *2-3 (Bankr. W.D. Mo. March 27, 2020) (citations omitted), *aff'd. sub nom. Tydings v. Reed*
(*In re Tydings*), No. 2:20-cv-04057, 2020 WL 5258457 (W.D. Mo. Sept. 3, 2020) (describing the "lowest
intermediate balance test," the "percentage (or pro-rata) approach," and FIFO).

8

04057, 2020 WL 5258457 (W.D. Mo. Sept. 3, 2020) (applying FIFO tracing to determine exempt amount of social security funds in a commingled bank account).[13]

The Trustee has filed copies of monthly bank statements for the Chase Account, covering the period from March 24, 2023 through September 25, 2024.[14] The Trustee has presented what he says is an appropriate FIFO analysis, based on the monthly statements, which shows that of the $37,537.41 balance in the Chase Account as of the September 19, 2024 petition date,[15] $27,426.88 is traceable to social security deposits and therefore exempt, while $10,110.53 is traceable to deposits from other sources and therefore not exempt.[16]

The Debtors disagree with the Trustee's tracing analysis, and have presented their own tracing analysis based on the Chase Account monthly statements. That analysis concludes that

---

[13] "After carefully considering the cases utilizing the various tracing methods and the facts underlying the courts' decisions, this Court finds that FIFO is the most appropriate method to reasonably trace the [social security benefits] in the Account and calculate the amount of the Debtor's exemption." 2020 WL 1510025, at *3.

[14] Ex. 5 to Exemption Objections (Docket # 70-1). The Court notes that there are four pages missing from the bank statements in this exhibit, and those missing pages are not elsewhere in the record. Specifically, the exhibit is missing one page each from the Chase Account statements covering of the following time periods: (1) May 24, 2023 to June 26, 2023; (2) October 26, 2023 to November 24, 2023; (3) March 26, 2024 to April 23, 2024; and (4) August 24, 2024 to September 25, 2024. But these missing pages do not impair this Court's ability to perform its own FIFO tracing analysis, discussed below.

[15] The Trustee says that the balance in the Chase Account as of the petition date was $37,537.41. The Debtors do not dispute this, even though the balance stated in their Schedule A/B was slightly higher, $37,789.46. The Court cannot determine with precision what the petition date balance was, because of a missing page in the Chase Account statement for the time period August 24, 2024 through September 25, 2024. *See supra* note 14. But this small discrepancy does not affect the amount that the Court finds, from its own FIFO analysis, to be the non-exempt amount, discussed below.

[16] *See* Ex. 6 to Exemption Objections (Docket # 70-2) (Trustee's FIFO tracing analysis).

9

the entire balance in the Chase Account as of the petition date is traceable to social security deposits and therefore exempt.[17]

The Court is not satisfied with either side's FIFO tracing analysis. The Court has performed its own FIFO tracing analysis, which yields the following result: of the balance in the Chase Account on the September 19, 2024 petition date, $10,203.54 is traceable to deposits from sources other than social security benefits, and therefore not exempt under 42 U.S.C. § 407. The Court so finds, and therefore the Court will disallow the Debtor Karen Minc's claimed exemption to this extent.

The Trustee's tracing method is to begin at the petition date and work backward in time to find the source of the each of the most recent deposits that add up to the petition date account balance. The Trustee argues for this approach, in part, as follows:

> Under a FIFO analysis (first in, first out) of tracing commingled money, the Court must assume that the first funds into the account are also the first funds out of the account. . . .
>
> The rationale for the Trustee's analysis is as follows. Because the first funds into the account at any given point are deemed to be the first funds withdrawn from the account, the Petition Date value ($37,537.41) is directly traceable to the last $37,537.41 that was deposited into the account. Therefore, starting with the Petition Date value of $37,537.41, the Trustee worked backwards in time by allocating deposits by Social Security or Non-Social Security Deposits. . . .[18]

---

[17] *See* Ex. A to Debtors' Resp. to Exemption Objections (Docket # 71) at pdf pp. 19-20.

[18] Br. in Supp. of Exemption Objections (Docket # 70) at pdf p. 18 (bold in original).

10

The Debtors criticize the Trustee's tracing analysis. They argue primarily that the Trustee's tracing is incorrect because it fails to account for withdrawals from the Chase Account. The Debtors argue that:

> Properly applied during the time period proposed by the Trustee's analysis (April 12, 2023 through the filing date, September 19, 2024) and including all **deposits and withdrawals** makes clear that the three (incorrectly listed as two in the Trustee's analysis) non-Social Security deposits occurring during the period were dissipated entirely by withdrawals in the account and replaced entirely by the date of filing.[19]

The Trustee's reply to this argument is that the Debtors' focus on withdrawals from the Chase Account in their tracing analysis does not accurately demonstrate how much of the withdrawals was of social security funds and how much of the withdrawals was of non-social security funds. The Trustee points out that the Debtors' analysis, in effect, assumes that there was a zero balance in the Chase Account at the beginning of the period covered by the bank statements — *i.e.*, on March 24, 2023. But that assumption by the Debtors is not correct; in fact the beginning balance in the Chase Account on March 24, 2023 was $37,603.02. The Trustee argues:

> The Debtors are correct that the FIFO analysis *could* be performed (albeit with significantly more effort) by going forward in time from March 24, 2023 (the first date in the statements attached as Exhibit 5 to the Objection) and looking at both subsequent deposits and withdrawals. The Debtors attempted to demonstrate this in their Response, but this FIFO analysis is flawed as it does not consider the starting balance on March 24, 2023. These are the first funds in (given that they were already there), from which all subsequent disbursements first get deducted.[20]

---

[19]  Debtors' Resp. to Trustee's Exemption Objections (Docket # 71) at pdf p. 5 (bold in original).

[20]  Chapter 7 Trustee Reply Br. (Docket # 81) at pdf p. 2 (footnote omitted) (italics in original).

11

There is no evidence in the record from which the Court can determine how much of the $37,603.02 balance in the Chase Account as of March 24, 2023 was from social security deposits, as opposed to being from other sources. The Trustee argues that this does not matter in this case, "because all of these funds were withdrawn from the account as reflected in the statements attached as Exhibit 5 to the [Exemption] Objection."[21]

The Court has performed its own FIFO analysis, of the type that the Trustee says "could be performed (albeit with significantly more effort)," that is, "by going forward in time from March 24, 2023 (the first date in the statements attached as Exhibit 5 to the [Exemption] Objection) and looking at both subsequent deposits and withdrawals."[22]

Because the composition of the Chase Account balance on March 24, 2023 is unknown (social security funds vs. funds from other sources), the Court has done two FIFO tracings. The first one, shown by the chart in Appendix 1 attached to this Opinion, assumes that *all* of the funds in the Chase Account as of March 24, 2023 were from social security deposits. The second one, shown by the chart in Appendix 2 attached to this Opinion, assumes that *none* of those funds were from social security deposits. The result is the same in each case: the amount of funds in the Chase Account as of the September 19, 2024 petition date that is *not* traceable to social security deposits is $10,203.54.[23] The Court finds that this is the non-exempt amount of funds in

---

[21] *Id.* at pdf p. 2 n.2.

[22] *Id.* at pdf p. 2 (quoted above) (italics omitted).

[23] Based on this, the Court agrees with the Trustee's assertion that "[i]t does not matter under FIFO if this [March 24, 2023] starting balance was all exempt assets, all non-exempt assets, or some combination of the two, . . . ." (*Id.* at pdf p. 2 n.2).

the Chase Account as of the petition date.  The rest of the funds are traceable to social security deposits, and are exempt.

For these reasons, the Court will disallow the Debtor Karen Minc's claimed exemption in the Chase Account to the extent of $10,203.54, and otherwise will allow the exemption.

### 3. Karen Minc's life insurance policy with Sun Life Insurance Company

The Debtors each claimed an exemption in the asset described in their Schedule A/B and in their Schedules C as the "Sun Life Insurance Company - Whole life [insurance policy] with cash surrender value.  Face value $200,000[.]"[24]  The Debtors listed the current value of this asset (the "Sun Life Policy") as $23,393.98.[25]  In their Schedules C, each of the Debtors claimed this asset as fully exempt based on Mich. Comp. Laws §§ 500.2207 and 500.2209.[26]

The following facts about the Sun Life Policy are shown by a Sun Life summary of the policy filed by the Trustee,[27] and are not disputed.  The Debtor Karen Minc is the owner of the Sun Life policy, and also the named insured.  The policy has a death benefit amount of $200,000.00, and as of September 9, 2024 (ten days before the petition date in this case), the policy had a "net cash surrender value" of $23,408.31.  The "[p]rimary [b]eneficiary(s)" of the policy are the "TRUSTEES OF THE KAREN E. MINC REVOCABLE TRUST AS AMENDED, DTD 3-24-97, TRUST."  There are no other named beneficiaries.

---

[24]  *See* Docket # 1 at pdf p. 25 (Jack Minc Schedule C), pdf p. 28 (Karen Minc Schedule C).

[25]  *See id.; see also* Schedule A/B, line 31 (Docket # 1) at pdf p. 18.

[26]  *See* Docket # 1 at pdf p. 25 (Jack Minc Schedule C), pdf p. 28 (Karen Minc Schedule C).

[27]  Ex. 7 to Exemption Objections (Docket # 70-3).

13

The Trustee has filed a copy of the trust agreement for the revocable trust that is the named beneficiary (sometimes referred to below as the "Trust").[28] The Debtors have represented to the Trustee that the Trust has no assets other than its beneficiary interest under the Sun Life Policy, and the Trustee does not dispute this.[29] The following statements by the Trustee about the Trust are accurate, and the Debtors do not dispute them:

> [I]t is a revocable trust [ ] which Mrs. Minc (and therefore the Trustee) has the absolute right to revoke at any time prior to Mrs. Minc's death. Trust, at 17; Article XI.B. Further, during her life, Mrs. Minc has the absolute right to control, including obtain the surrender value of, the Sun Life Policy. Trust, at 17; Article XI.A. Next, during her life, Mrs. Minc is the sole beneficiary of the Trust. Trust at 1; Article II.A.
>
> Next, the Trust also dictates what is to happen to Trust property after Mrs. Minc's death. . . . Specifically, Article III of Trust indicates that the first payees of Trust property are Mrs. Minc's "legally enforceable debts." Pursuant to Article IV of the Trust, it is only after such debts are paid that the remaining proceeds of the Trust would flow to Mr. Minc (assuming he survives her) or the pour over Family Trust for which her children are beneficiaries.[30]

---

[28] Ex. 8 to Exemption Objections (Docket # 70-4).

[29] *See* Br. in Supp. of Exemption Objections (Docket # 70) at pdf p. 20 n.1.

[30] *Id.* at pdf pp. 20-21.

14

The Debtors no longer contend that Mich. Comp. Laws § 500.2209 applies to exempt the Sun Life Policy.[31] They do contend that it is exempt under Mich. Comp. Laws § 500.2207(1).[32] The Court will quote that lengthy section in full, with bolding and italics to highlight the parts that are most relevant to the parties' arguments. Section 500.2207(1) states:

> It shall be lawful for any husband to insure his life for the benefit of his wife, and for any father to insure his life for the benefit of his children, or of any one or more of them; and in case that any money shall become payable under the insurance, the same shall be payable to the person or persons for whose benefit the insurance was procured, his, her or their representatives or assigns, for his, her or their own use and benefit, free from all claims of the representatives of such husband or father, or of any of his creditors; **and any married woman,** either in her own name or in the name of any third person as her trustee, **may cause to be insured the life of her husband, or of any other person,** for any definite period, or for the term of life, **and the moneys that may become payable on the contract of insurance, shall be payable to her, her representatives or assigns, free from the claims of the representatives of the husband, or of such other person insured, or of any of his creditors**; and in any contract of insurance, it shall be lawful to provide that on the decease of the person or persons for whose benefit it is obtained, before the sum insured shall become payable, the benefit thereof shall accrue to any other person or persons designated; and such other person or persons shall, on the happening of such contingency, succeed to all the rights and benefits of the deceased beneficiary or beneficiaries of the policy of insurance, notwithstanding he, she or they may not at the time have any such insurable interest as would have enabled him, her or them to obtain a new insurance; *and the proceeds of any policy of life or endowment insurance, which is payable to the*

---

[31]  At least one reason why Mich. Comp. Laws § 500.2209 does not cover the Sun Life Policy is that the exemption provided by § 500.2209 does not apply "where the amount of premium annually paid shall exceed the sum of $300.00." Mich. Comp. Laws § 500.2209(1). The premium for the Sun Life Policy is much higher than this $300.00 per year limit. It is $252.05 per month — *i.e.*, $3,024.60 per year. (*See* Ex. 7 to Exemption Objections (Docket # 70-3) at pdf p. 3).

[32]  The Debtors do not argue that the Sun Life Policy is exempt under Mich. Comp. Laws § 500.2207(2).

> *wife, husband or children of the insured or to a trustee for the*
> *benefit of the wife, husband or children of the insured, including*
> *the cash value thereof, shall be exempt from execution or liability*
> *to any creditor of the insured;* and said exemption shall apply to
> insurance heretofore or hereafter issued; and shall apply to
> insurance payable to the above enumerated persons or classes of
> persons, whether they shall have become entitled thereto as
> originally designated beneficiaries, by beneficiary designation
> subsequent to the issuance of the policy, or by assignment (except
> in case of transfer with intent to defraud creditors).

Mich. Comp. Laws § 500.2207(1) (bold and italics added).

The Trustee argues that this statute does not apply to the Sun Life Policy, for several reasons. The Debtors disagree. The parties dispute the meaning of both the clause that is in bold above (the "bolded clause"), and the clause that is in italics above (the "italicized clause"). The Court will discuss each clause.

### a. The bolded clause

With respect to the bolded clause, the primary dispute concerns the meaning of the following phrase: "any married woman, . . . may cause to be insured the life of her husband, or of any other person, . . . ." The Trustee argues, among other things, that this phrase does not apply when the "married woman" insures her own life. Rather, the Trustee says, this phrase applies only when the married woman insures the life of her husband or some other person other than herself. Put another way, the Trustee argues that the phrase "any other person" does not include the "married woman" herself. In this case, the "married woman" Karen Minc insured her own life under the Sun Life Policy, so, according to the Trustee, the exemption provided by the bolded clause does not apply.

16

The Debtors argue that the phrase "any other person" means any person other than the married woman's husband, and includes the married woman herself. Therefore, the Debtors say, the bolded clause exemption does cover Karen Minc's insuring her own life. The Debtors argue that this reading of the statute is reasonable, and they also rely on the requirement that courts construe Michigan exemptions liberally in favor of debtors. *See In re Wylie*, 630 B.R. 68, 74 (Bankr. E.D. Mich. 2021) (citations omitted), *aff'd. sub nom. Wylie v. Miller*, 650 B.R. 504 (E.D. Mich. 2022); *Sustaita,* 631 B.R. at 415 (quoting *Stewart v. Welton*, 32 Mich. 56, 60 (1875) ("Because exemption statutes are remedial in nature, they should generally be liberally construed 'for the purpose of carrying out the wise and humane object[s] in view.'")).

The Debtors also support their reading of the bolded clause, in part, by noting that the first clause in § 500.2207(1) permits a husband to insure his own life, for the benefit of his wife, and permits a father to insure his own life, for the benefit of his children. Given this, the Debtors argue, it makes sense to read the bolded clause to mean that a wife also can insure her own life. A contrary reading, the Debtors say, would make this statute a form of gender discrimination that violates the equal protection guarantee of the Michigan Constitution, Article I, § 2,[33] by permitting a male to insure his own life while not permitting a female to insure her own life.

The parties cite no case that addresses this issue about the meaning of Mich. Comp. Laws § 500.2207(1), and the Court is not aware of any such case. This is despite the fact that § 500.2207 "has roots dating back to the 1800s," and its "married woman" language can be traced back to an 1869 statute. *See DC Mex Holdings LLC v. Affordable Land LLC*, 907 N.W.2d

---

[33] That provision in the Michigan Constitution states, in relevant part, that "[n]o person shall be denied the equal protection of the laws . . . ."

611, 616 & n.3 (Mich. Ct. App. 2017). In the absence of a decision on the issue by the Michigan

Supreme Court, this Court must predict what that court would decide. *See Wylie,* 630 B.R. at 73-

74; *Sustaita,* 631 B.R. at 406 (citations omitted); *see generally Miller v. Sullivan* (*In re Wylie*),

670 B.R. 70, 84 (Bankr. E.D. Mich. Apr. 10, 2025) (citation omitted).

     This Court has discussed Michigan law on statutory interpretation in previous opinions.

The Court reiterates what it stated in *In re Wylie*:

>      Under Michigan law, courts interpreting a statute must
> "ascertain and give effect to the intention of the Legislature."
> *Grand Rapids v. Crocker*, 189 N.W. 221, 222 (Mich. 1922). "A
> statute that is clear and unambiguous on its face needs no
> interpretation by a court; only statutes which are of doubtful
> meaning are subject to the process of interpretation." [*In re*]
> *Spradlin*, 231 B.R. [254,] 256 [(Bankr. E.D. Mich. 1999)] (citing,
> among other cases, *Jones v. Grand Ledge Public Schools*, 84
> N.W.2d 327 (1957)). "In construing a statute, 'effect must be
> given, if possible, to every word, sentence and section.'" *Id.*
> (quoting *Crocker*, 189 N.W. at 222).

*In re Wylie,* 630 B.R. at 74. Furthermore,

> Michigan law requires the courts to construe exemption statutes
> liberally, in favor of the debtor, but courts also must be faithful to
> the wording of the statutes. *See Spradlin*, 231 B.R. at 258-59; *In re
> Richardson*, 621 B.R. 413, 417 (Bankr. E.D. Mich. 2020).
> *Spradlin* described Michigan law on this point:
>
> . . . .
>
> > However, "[t]he rule of liberal construction will not
> > override other rules where its application would
> > defeat the intention of the legislature or of the
> > evident meaning of an act." *Sutherland Stat. Const.*
> > § 60.01 (4th ed. 1986 & Supp.1991).
>
> *Spradlin*, 231 B.R. at 258-59.

*Id.*

The Court agrees with the Trustee's interpretation of the bolded clause in Mich. Comp. Laws § 500.2207(1). In stating that the married woman "may cause to be insured the life of her husband, or of any other person," the bolded clause unambiguously means that the married woman may insure the life of any person other than herself. The married woman herself cannot be considered within the phrase "any other person."

If it is viewed only in isolation, the statutory phrase just quoted arguably could be considered ambiguous on this question. But any such ambiguity is removed by the rest of the sentence in the bolded clause, namely this language: ". . . and the moneys that may become payable on the contract of insurance, shall be payable to her, her representatives or assigns, *free from the claims of the representatives* of the husband, or *of such other person insured*, or of any of his creditors[.]" (emphasis added). If the married woman could be an "any other person" whose life she can insure, the phrase just quoted in bold and italics would not make sense. If the wife could insure her own life (as an "any other person"), and did so, and then died, the money payable under the policy would be payable to her representative (presumably the personal representative of her decedent's estate,) "free from the claims of" that same representative ("the representatives . . . of such other person insured."). This makes clear that the phrase "any other person" does not include the married woman herself. So the married woman may not insure her own life and obtain an exemption under the bolded clause.

As a result, the exemption provided by the bolded clause unambiguously does not apply to the Sun Life Policy. Karen Minc insured her own life, not the life of anyone else, and that is not covered by the bolded clause.

19

It is not for this Court to speculate why the legislature worded the bolded clause, and the clause that precedes it in Mich. Comp. Laws § 500.2207(1), the way it did, so long ago. The Court must apply those unambiguous clauses in the statute as written. Under those clauses, exemptions are provided only when (1) a husband insures his own life (and not the life of anyone else) for the benefit of his wife; (2) a father insures his own life (and not the life of anyone else) for the benefit of one or more of his children; and (3) a married woman insures the life of any person other than herself. In any other situation, the life insurance obtained by the husband, father, or married woman is not exempt.

As noted above, the Debtors argue that if the statute is read this way, it is a form of gender discrimination that violates the equal protection guarantee of Article I, § 2 of the Michigan Constitution. The Debtors argue that the Court should avoid an interpretation of the statute that would render it unconstitutional, if another interpretation is reasonable.[34] *See, e.g., Edmond v. United States*, 520 U.S. 651, 658 (1997) (court must avoid "interpret[ing a statute] in a manner that would render it clearly unconstitutional . . . if there is another reasonable interpretation available.") (citations omitted). But the reading the Debtors advocate is not reasonable, or even possible, for the reasons described above. The Court cannot ignore the unambiguous meaning of the words in the statute.

And in this case it is not necessary to rule on whether the statute, as interpreted by this Court, is unconstitutional. The Debtors do not actually seek any relief that could be available as a remedy if the statute is unconstitutional. Nor would any such relief help the Debtors. As the Trustee correctly points out, the only remedy a court could provide if the statute is

---

[34] *See* Debtors' Resp. Br. (Docket # 90) at pdf p. 3.

20

unconstitutional would be to nullify the statute. The Court could not amend the statute to **add** exemption coverage to the statute. *See SBC Michigan v. Public Service Commission (In re Complaint of Rovas Against SBC Mich.*), 754 N.W. 2d 259, 264 (Mich. 2008); *In re Certified Questions From United States Dist. Ct. , W. Dist. of Michigan , S. Div.*, 958 N.W.2d 1, 16 n.16 (Mich. 2020).[35] And nullifying this statute would not give the Debtors the exemption they seek. They still would have no exemption in the Sun Life Policy.

One might argue, as the Debtors do, that the bolded clause in Mich. Comp. Laws § 500.2207(1) is a form of gender discrimination, but if it is, it discriminates in ways that cut against both genders. This exemption statute discriminates against men who are married or fathers, compared to married women, because such men can insure only their own lives, whereas married women can insure any lives other than their own. On the other hand, the statute discriminates against married women, because unlike men who are married or fathers, such women cannot insure their own lives. And this exemption statute discriminates against both men and women with respect to marital status — no life insurance exemption is possible for an unmarried man who is not a father, or for any unmarried woman (even one who has children).

Judged by modern standards of gender equality and marital status, the bolded clause in Mich. Comp. Laws § 500.2207(1), a relic from the 19th century, may have numerous shortcomings. But correcting any such shortcomings is up to the Michigan Legislature, if it chooses to do so; it is not the province of this federal bankruptcy court.

---

[35] *See* Chapter 7 Trustee Reply Br. (Docket # 81) at pdf p. 4 & n.5. For this proposition, the Trustee cites only a concurring opinion in a Michigan Supreme Court case: *League of Women Voters of Michigan v. Sec'y of State*, 975 N.W.2d 840, 869-70 (Mich. 2022) (Zahra, J., concurring in part and dissenting in part) (citations omitted). While that concurring opinion was not joined by a majority of the court, it cited the *Rovas* case, among others.

As will be seen, some of the types of discrimination in the bolded clause of Mich. Comp. Laws § 500.2207(1) do not exist in the italicized clause, which was added to the statute by amendments in 1929 and 1931. That clause added a separate exemption, as discussed below, and that clause does not make distinctions based on gender.

For the reasons discussed above, the exemption provided by the bolded clause in Mich. Comp. Laws § 500.2207(1) does not apply to the Sun Life Policy.

**b. The italicized clause**

The Debtors argue that the Sun Life Policy is exempted by the italicized clause in Mich. Comp. Laws § 500.2207(1). The Trustee disagrees. Again, the italicized clause, quoted above, states that

> *the proceeds of any policy of life or endowment insurance, which is payable to the wife, husband or children of the insured or to a trustee for the benefit of the wife, husband or children of the insured, including the cash value thereof, shall be exempt from execution or liability to any creditor of the insured;*
> *. . . .*

Mich. Comp. Laws § 500.2207(1) (italics added).

The Debtors argue that this clause creates an exemption from liability to any creditor of Karen Minc ("any creditor of the insured"), for the proceeds of the Sun Life Policy, in the form of a death benefit upon Karen Minc's death, because such a death benefit would be "payable to a trustee for the benefit of the . . . husband or children of the insured." That is so, the Debtors say, because the named beneficiaries of the death benefit are the trustees of Karen Minc's revocable trust, and that trust, in turn, is for the benefit of Karen Minc's husband and children.

22

The Trustee argues, among other things, that the italicized clause does not itself create any exemption. Rather, the Trustee says, the only exemptions in Mich. Comp. Laws § 500.2207(1) are those created by the bolded clause (the one containing the "any married woman" language) and the clause before the bolded clause (the one permitting a husband or father to insure his own life). The Trustee argues that the italicized clause, which was added to the original statute by amendments adopted in 1929 and 1931, did nothing more than clarify that the exemptions in the original statute applies to all proceeds of the insurance policy, including proceeds of a cash surrender, and not just to death benefits. In support of this argument, the Trustee cites two cases, *Equitable Life Assur. Soc. of United States v. Hitchcock*, 258 N.W. 214, 217 (Mich. 1935) and *DC Mex Holdings LLC v. Affordable Land LLC*, 907 N.W.2d 611, 617 (Mich. Ct. App. 2017).

The Debtors contend that the Trustee's argument misreads those cases, and that the italicized clause plainly does more than simply clarify that all proceeds of a life insurance policy are exempt when the earlier clauses in the statute apply. The Debtors argue that the italicized clause also creates an exemption that is separate from, and in addition to, the exemptions provided by the earlier clauses in the statute.

The Court agrees with the Debtors that the italicized clause itself creates an exemption. That exemption is in addition to the exemptions created by the bolded clause (applicable to a "married woman") and by the earlier clause permitting a husband or father to insure his own life. This is clear from the language of the italicized clause, which states that certain specified proceeds of a life insurance policy or an endowment insurance policy "shall be exempt from execution or liability to any creditor of the insured." This is also evident from language in the

23

italicized clause clearly indicating that its exemption *can* apply when a woman insures her own life for the benefit of her husband or children. That language is the reference in the italicized clause to policy proceeds that are "**payable to the** wife, **husband** or children **of the insured**" (emphasis added). Under this language referring to the "husband" of "the insured," necessarily, a wife can be "the insured" under a life insurance policy, and make the proceeds of that policy exempt by making them payable to her husband or children. That is different from the exemption provided by the bolded clause, which as discussed above, unambiguously does not provide an exemption when the "married woman" insures her own life. This necessarily implies that the exemption expressly stated in the italicized clause is distinct from, and therefore in addition to, the exemption provided in the bolded clause.

The Court predicts that the Michigan Supreme Court would agree with this conclusion, and would hold that its 1935 decision in the case cited by the Trustee, *Equitable Life Assur. Soc. of United States v. Hitchcock*, is not to the contrary.

The *Equitable Life* case did not involve any issue remotely like the issue in this case. That case involved a "convertible term [life insurance] policy, with no surrender value." 258 N.W. at 215. Before his death, the insured under the policy made a change of beneficiary, at a time when he was insolvent, and the issue was whether the change in beneficiary was a fraudulent transfer. Originally the beneficiary was the estate of the insured. But he changed the beneficiary to trustees for his minor children. After the death of the insured, a creditor of his estate challenged the change in beneficiary as fraudulent. The Michigan Supreme Court held that the change in beneficiary was not a fraudulent transfer, because at the time of the change the policy had no cash surrender value. *See* 258 N.W. at 217.

24

The Trustee argues that the following language in *Equitable Life* means that the italicized clause in what is now Mich. Comp. Laws § 500.2207(1) does not itself create any exemption:

> The statute . . . was . . . amended by section 12451, C. L. 1929, so as to add the following clause: "And the proceeds of any policy of life or endowment insurance, which is payable to the wife, husband or children of the insured, including the cash value thereof, shall be exempt from execution or liability to any creditor of the insured." **The above amendment simply clarifies the meaning of the statute as originally worded, so as to specifically exempt all proceeds of the policies described in the original statute, whether such proceeds are realized through the surrender of the policy for its cash surrender value, or in any other manner**. The amendment, however, does not provide that the proceeds of a policy originally payable to the estate of the insured, but later transferred to his wife or children, shall be exempt from the rights of creditors of the insured. Such a provision does appear in the statutes of some states. A subsequent amendment to the statute, by Act No. 170, Public Acts 1931, extending the exemption to policies made payable to a trustee for the benefit of the wife, husband, or children of the insured, is not material.

*Equitable Life*, 258 N.W. at 217 (emphasis added) (citations omitted).

The bolded language just quoted was dictum, because the *Equitable Life* court relied solely on the lack of any cash value in the policy as the reason why there was no fraudulent transfer. The bolded language relied on by the Trustee had nothing to do with that holding in *Equitable Life*.

In a 2017 Michigan Court of Appeals case cited by both the Trustee and the Debtors, the court described the *Equitable Life* case in detail. *See DC Mex Holdings LLC v. Affordable Land LLC*, 907 N.W.2d 611 (Mich. Ct. App. 2017). The *DC Mex* case's description of *Equitable Life* confirms that the passage in *Equitable Life* now relied on by the Trustee was unnecessary to the holding in that case:

The policy at issue in *Equitable Life* was a term policy, did not have a cash surrender value, and was originally payable to the estate of the insured. *Equitable Life*, 270 Mich. at 74, 258 N.W. 214. The insured "was hopelessly insolvent" and attempted to change the beneficiary of the term policy to his two minor sons a day or two before committing suicide. *Id.* at 75, 258 N.W. 214. The issue on appeal in *Equitable Life* was whether a change in beneficiary for a life insurance policy was a fraudulent conveyance. *Id.* at 76, 258 N.W. 214. The Court explained that, "the proper rule [when there was a fraudulent conveyance] is to limit creditors to a recovery of the cash surrender value of the policy at the time of the transfer." *Id.* at 78, 258 N.W. 214.

Subsequently, the Court discussed 1929 CL 12451 and noted, "If the policy in the instant case had a cash surrender value at the time of the transfer, the proceeds of the policy, to the extent of such cash value, would not have been exempt from attacks of creditors of the insured under [1929 CL 12451] . . . ." *Id.* at 79, 258 N.W. 214. The Court explained the amendment and then stated that "[t]he amendment, however, does not provide that the proceeds of a policy originally payable to the estate of the insured, but later transferred to his wife or children, shall be exempt from the rights of creditors of the insured." *Id.* at 81, 258 N.W. 214. The Court went on to conclude that the lack of a cash surrender value precluded a fraudulent conveyance of property within the meaning of the relevant statute . . . .

*DC Mex*, 907 N.W. 2d at 618.

The *DC Mex* court noted that the statement quoted above in *Equitable Life* "may have been dictum," but then decided that the statement was *not* dictum, and was binding as a matter of *stare decisis*, because it was "germane to the controversy" in *Equitable Life*. *See id.* at 617-18. This Court disagrees; the statement in *Equitable Life* was not "germane to the controversy," and was dictum.

In any event, this Court must predict what the Michigan Supreme Court would decide if actually presented with the issue in this case. *See In re Wylie*, 630 B.R. at 73–74 ("Because the

Michigan Supreme Court has not decided the issue, the general rule is that this Court 'is "to discern, from all available sources, how [the Michigan Supreme Court] would respond if confronted with the issue."' *In re Spradlin*, 231 B.R. 254, 256 (Bankr. E.D. Mich. 1999) (quoting *In re Akron-Cleveland Auto Rental, Inc.*, 921 F.2d 659, 662 (6th Cir. 1990)), *aff'd sub nom. Wylie v. Miller*, 650 B.R. 504 (E.D. Mich. 2022)).

This Court predicts that the Michigan Supreme Court would decide that the italicized clause in Mich. Comp. Laws § 500.2207(1) does create an exemption, independent of and in addition to the exemptions in the bolded clause and the clause preceding the bolded clause. The Michigan Supreme Court would not feel itself bound by the unnecessary statement in *Equitable Life* relied on by the Trustee, and instead would find the language in the italicized clause to clearly create an exemption, independent of and in addition to the exemptions created by the bolded clause and the clause preceding it.[36]

The Court finds that even though the italicized clause creates its own exemption, such exemption does not apply to the Sun Life Policy in any respect.

---

[36] The Trustee admits that this is what is indicated by "the clear wording of the statute," and in one of his briefs states this about the *Equitable Life* case:

> **[T]he Trustee does not know why the [Michigan] Sup[r]eme Court disregarded what seems to be the clear wording of the statute and held that the added sentence was simply a clarification of other exemptions rather than a new, standalone exemption**. Regardless of why it made its determination, what is important for the Trustee's argument is that it did so hold.

Chapter 7 Trustee's Resp. to Debtors' Suppl. Br. . . . (Docket # 92) at pdf p. 4 n.2 (emphasis added).

First, the italicized clause clearly does not apply to the right that Karen Minc has, during her lifetime, to surrender the Sun Life Policy and receive the cash surrender value of the policy.[37] Karen Minc's bankruptcy estate succeeded to that surrender right, subject to any valid claim of exemption, under 11 U.S.C. § 541(a). The Debtors do not dispute that if the Sun Life Policy were surrendered, the cash surrender value would be payable to Karen Minc, as the owner of the policy, not to Karen Minc's revocable trust or to Karen Minc in her capacity as the trustee of her revocable trust.[38] In that situation, such proceeds of the Sun Life Policy would not be exempt under the italicized clause of Mich. Comp. Laws § 500.2207(1). That clause applies only to proceeds "payable to the wife, husband or children of the insured or to a trustee for the benefit of the wife, husband or children of the insured." Karen Minc, who is "the insured" under the Sun Life Policy, is none of these persons. So the cash surrender proceeds of the Sun Life Policy, which would be payable to Karen Minc, are not covered by any exemption in the italicized clause.[39] Since the bankruptcy estate has succeeded to Karen Minc's right to surrender the Sun

---

[37] Karen Minc has these rights under the Sun Life Policy, as the owner of that policy. And these rights also are expressly recognized by the terms of Karen Minc's revocable trust. (*See* Trust (Ex. 8 to Exemption Objections (Docket # 70-4)) at pdf p. 19, Art. XI, § A).

[38] The revocable trust indicates that when and if the death benefit is paid under the Sun Life Policy, that will be property of the Trust ("death benefits from insurance policies payable at my death"), but reserves to Karen Minc individually, "as owner of any life insurance policies made payable to the trustee," the right "to surrender the policies for cash, to receive dividends and all other payments available to the owner[.]" (*See* Trust (Ex. 8 to Exemption Objections (Docket # 70-4)) at pdf pp. 3 (opening paragraph), 19, Art. XI, § A).

[39] In addition, even if the cash surrender proceeds of the Sun Life Policy could be viewed as payable to Karen Minc in her capacity as trustee of her revocable trust, rather than Karen Minc individually as owner of the policy, those proceeds could not be deemed payable to "a trustee for the benefit of the wife, husband or children of the insured," within the meaning of the italicized clause. This is so for two reasons. The first reason is that during her lifetime, Karen Minc is the beneficiary of her revocable trust; her husband and children are not. (*See* Trust (Ex. 8 to Exemption Objections (Docket # 70-4)) at pdf p. 3, Art. II, § A). The second reason is the same reason that payment of the death benefit

28

Life Policy and receive the cash surrender proceeds, the Chapter 7 Trustee now has the surrender right, and no exemption applies to that surrender right or to the cash surrender proceeds.

As between the two possible rights to payment under the Sun Life Policy — *i.e.*, the cash surrender value or the death benefit — it appears that the only right with any practical importance in this bankruptcy case is the right to the cash surrender value. As a practical matter, the Trustee appears very likely to elect to surrender the Sun Life Policy, and obtain payment of the cash surrender value, rather than to keep the policy in place in the hope of receiving a death benefit. The latter course of action would require the Trustee to keep paying premiums on the policy and wait for the insured, Karen Minc, to pass away. There is no evidence or suggestion in the record that the Trustee intends to take such a course of action. Fortunately, there is no evidence or suggestion that Karen Minc is likely to pass away in the foreseeable future. And when the Trustee surrenders the Sun Life Policy and obtains the cash surrender value, any issue about the Debtors' right to exempt the death benefit will not matter.

But even if the right to exempt the death benefit does matter, the Court concludes that the italicized clause does not provide any exemption for the death benefit that would be payable in the event of Karen Minc's death. Proceeds in the form of the policy's death benefit would not be payable to "the wife, husband or children of the insured," of course, because under the policy the death benefit would be payable to the trustee(s) of Karen Minc's revocable trust.

Nor would the death benefit be exempt from Karen Minc's creditors on the ground that it would be payable "to a trustee for the benefit of the wife, husband or children of the insured." That is because under the terms of Karen Minc's revocable trust, described above, the death

_____

under the Sun Life Policy could not be deemed payable to such a trustee. *See* discussion below.

29

benefit proceeds would be paid first to satisfy Karen Minc's debts owing to her creditors, before any of the proceeds could be paid to or for the benefit of Karen Minc's husband or children.[40] The exemption in the italicized clause of Mich. Comp. Laws § 500.2207(1) would be only "from execution or liability to any creditor of the insured," *i.e.*, any creditor of Karen Minc. In effect, therefore, the terms of Karen Minc's revocable trust itself waive any right to exempt the death benefit from Karen Minc's creditors. As between Karen Minc's creditors on the one hand, and her husband and children on the other hand, the payment of the death benefit to Karen Minc's revocable trustee(s) could not be viewed as a payment to "a trustee for the benefit of the . . . husband or children of the insured," within the meaning of the italicized clause.

For these reasons, the Sun Life Policy is not exempt in any part under the italicized clause of Mich. Comp. Laws § 500.2207(1), whether one considers the right to the cash surrender value or the right to a death benefit.

For all of the reasons stated above, the Court will order that the Debtors' claims of exemption with respect to the Sun Life Policy are disallowed, in their entirety.

## 4. The balance, as of the petition date, of the proceeds of the Debtors' sale of real estate they held as tenants by the entireties

In their Schedule A/B, the Debtors listed property they described as "Proceeds of sale of entireties property" with a value of $122,594.15.[41] The entireties property was the Debtors' former home, located at 30507 Fox Club Drive, Farmington, Michigan.[42] In their Schedules C,

---

[40] *See* Trust (Ex. 8 to Exemption Objections (Docket # 70-4)) at pdf p. 3, Art. III.

[41] Schedule A/B, line 1.1 (Docket # 1) at pdf p. 11.

[42] *See id.*

each of the Debtors claimed one-half the value of this asset ($61,297.08) as exempt, based on Mich. Comp. Laws § 600.5451(1)(n).[43]  In combination, therefore, the Debtors have claimed the entire $122,594.15 value of this asset as exempt.

The Trustee objects to these claimed exemptions, and asks the Court to disallow them entirely.  The parties agree that the Court should consider the Debtors actually to be claiming the exemptions under a different subsection of the Michigan exemption statute — *i.e.*, Mich. Comp. Laws § 600.5451(3) — and not Mich. Comp. Laws § 600.5451(1)(n).  The Court will do so, although both parts of the statute are relevant.  They provide:

> (1) A debtor in bankruptcy under the bankruptcy code, 11 USC 101 to 1532, may exempt from property of the estate property that is exempt under federal law or, under 11 USC 522(b)(2), the following property:
> . . . .
>
> (n)  Property described in section 1 of 1927 PA 212, MCL 557.151, or real property, held jointly by a husband and wife as a tenancy by the entirety, except that this exemption does not apply with regard to a claim based on a joint debt of the husband and wife.
> . . . .
>
> (3)  If property that is exempt under this section is sold, damaged, destroyed, or acquired for public use, the right to receive proceeds or, if the owner receives proceeds and holds them in a manner that makes them identifiable as proceeds, the proceeds received are exempt from the property of a federal bankruptcy estate in the same manner and amount as the exempt property. An exemption under this subsection may be claimed up to 1 year after the receipt of the proceeds by the owner.

Mich. Comp. Laws § 600.5451.

---

[43]  *See* Docket # 1 at pdf p. 23 (Jack Minc Schedule C), pdf p. 26 (Karen Minc Schedule C).

31

The following facts about the $122,594.15 in sale proceeds are undisputed. In October 2023, the Debtors sold their home at 30507 Fox Club Drive, Farmington Hills, Michigan. They had owned this property jointly, as tenants by the entireties. The Debtors received a check dated October 9, 2023, made payable to them jointly, in the amount of $214,957.92, representing the proceeds of the property sale.[44] The Debtors endorsed the check payable to their attorney, who deposited the proceeds into his IOLTA account on October 26, 2023.[45] Thereafter, the Debtors' attorney disbursed some of the proceeds, for the Debtors' benefit, including the payment of debts jointly owed by the Debtors, until $122,594.15 remained in the IOLTA account as of the September 19, 2024 petition date.[46]

The Debtors contend that all of these sale proceeds are exempt under Mich. Comp. Laws § 600.5451(3). This is so, according to the Debtors, because the entire $122,594.15 amount represents identifiable proceeds from the sale of the Debtors' real property that they held jointly as a tenancy by the entirety, covered by Mich. Comp. Laws § 600.5451(1)(n). Because of this, and the fact that the sale proceeds were received less than 1 year before the bankruptcy petition date, and the fact that, according to the Debtors, they had no joint debts as of the petition date, the Debtors argue that the sale proceeds are entirely exempt under Mich. Comp. Laws § 600.5451(3).

The Trustee disputes the Debtors' exemption claim.

---

[44] A copy of this check is attached as Exhibit 9 to the Trustee's Exemption Objections (Docket # 70-5).

[45] *See* Exhibit 10 to the Trustee's Exemption Objections (Docket # 70-6).

[46] *See* Exhibit 11 to the Trustee's Exemption Objections (Docket # 70-7).

In considering the arguments of the parties, the Court finds it very important to remember, as held by the cases cited in Part III.A of this Opinion, that bankruptcy exemptions are fixed and determined as of the bankruptcy petition date. As this Court has explained:

> The Court must determine Debtor's claimed exemptions as of the date he filed his bankruptcy petition. *See Lawless v. Newton* (*In re Lawless*), 591 F. App'x 415, 417 (6th Cir. 2014); [*In re*] Demeter, 478 B.R. [281,] 286 [Bankr. E.D. Mich. 2012)]; [In re] *Hanh Hieu Dang*, 473 B.R. [218,] 221 [(Bankr. W.D. Mich. 2012)] ("Exemptions are determined as of the filing date."); *In re Buick*, 237 B.R. 607, 609 (Bankr. W.D. Pa. 1999) and cases cited therein (holding that a debtor's entitlement to an exemption under § 522(d)(1) is "determined as of the filing date of . . . [a bankruptcy] petition").

*In re Sharkey*, 563 B.R. 655, 659 (Bankr. E.D. Mich. 2017) (quoting *In re Kizer*, 539 B.R. 316, 319 (Bankr. E.D. Mich. 2015)).

. . . .

> Exemptions are fixed, and must be determined, as of the date on which the Debtors filed their bankruptcy petition. *See* cases cited [above]; *see also In re Hamacher*, 535 B.R. 180, 182 (Bankr. E.D. Mich. 2015) ("[E]xemptions are determined as of the bankruptcy petition filing date.") (citations omitted); *Lasich v. Wickstrom* (*In re Wickstrom*), 113 B.R. 339, 343-44 (Bankr. W.D. Mich. 1990) ("[B]ankruptcy exemptions are fixed on the date of filing" and that means that "*we focus only on the law and facts as they exist on the date of filing the petition*") (italics in original) (citations omitted) (quoting *Armstrong v. Peterson* (*In re Peterson*), 897 F.2d 935, 937 (8th Cir. 1990)) (also citing *White v. Stump*, 266 U.S. 310, 313 [(1924)]).

*In re Wylie*, 630 B.R. 68, 71, 81 (Bankr. E.D. Mich. 2021), *aff'd sub nom. Wylie v. Miller*, 650 B.R. 504 (E.D. Mich. 2022).

The parties agree that the exemption in Mich. Comp. Laws § 600.5451(1)(n) does not apply, because the Debtors sold their entireties real estate months before the bankruptcy petition date. As of the petition date, the Debtors only owned proceeds of the sale of their real estate; they did not own the real estate itself. As a result, the parties agree, the exemption for real property in § 600.5451(1)(n) does not apply.[47] Nor does § 600.5451(1)(n) otherwise apply.[48]

The Trustee argues that the exemption in Mich. Comp. Laws § 600.5451(3) does not apply to the sale proceeds either, for multiple reasons.

First, the Trustee argues that this exemption applies only to the proceeds of a *post-petition* sale of exempt property, and not to the proceeds of any pre-petition sale of property. The Trustee argues:

> [T]he statutory condition that triggers this exemption is "[i]f property that is exempt under this section is sold, damaged, destroyed, or acquired for public use . . . ." Given this condition, it is impossible for it to apply outside of bankruptcy given that, under

---

[47] There are some older cases suggesting that under Michigan common law, a tenancy by the entireties exemption extends to proceeds of the sale of the entireties real estate under the limited circumstance "when the proceeds are to be reinvested in other similar entireties property within a reasonable period of time." *See Lasich v. Wickstrom* (*In re Wickstrom*), 113 B.R. 339, 349 (Bankr. W.D. Mich. 1990) (citing *Jackson v. Leitch* (*In re Jackson*), 92 B.R. 211 (W.D. Mich. 1988)). This case law may have been supplanted by the Michigan bankruptcy exemption statute, Mich. Comp. Laws § 600.5451(1)(n), and by the similar Michigan general exemption statute, Mich. Comp. Laws § 600.6023a, each of which was enacted in 2004. Nothing in the language of Mich. Comp. Laws § 600.5451(1)(n) suggests that the exemption for entireties real estate ever extends to any proceeds from the sale of such real estate. In any event, the Debtors do not allege that they had any intention of reinvesting the sale proceeds at issue in new entireties real estate, or that they intended to do so "within a reasonable period of time." The Debtors sold their entireties real estate in October 2023, eleven months before filing their bankruptcy case.

[48] Mich. Comp. Laws § 600.5451(1)(n) also exempts personal property described in Mich. Comp. Laws § 557.151. But the Debtors do not contend that § 557.151 covers the real estate sale proceeds at issue. The types of property covered by that section are limited to "bonds, certificates of stock, mortgages, promissory notes, debentures, or other evidences of indebtedness . . . made payable to persons who are husband and wife . . . ." Mich. Comp. Laws § 557.151.

34

M.C.L. §600.5451(1), the exemptions apply only to a "debtor in bankruptcy." Given that a debtor can only become a debtor upon filing a bankruptcy case, it stands to reason that the only proceeds that §600.5451(3) exempts are those that arise after the filing of bankruptcy.[49]

The Debtors argue that § 600.5451(3) applies to proceeds of a *pre-petition* sale of property that would be exempt as of the bankruptcy petition date under § 600.5451(1), had it not been sold, as long as the Debtors' receipt of the sale proceeds occurred within a year before the bankruptcy petition date.

The parties cite no case addressing this dispute about the meaning of this exemption statute, and the Court is not aware of any such case. The Court finds the statute to be ambiguous. The parties have made competing arguments about the legislative history of the statute, but the Court finds that the legislative history is not helpful in resolving the statutory ambiguity. The Court agrees with the Debtors' interpretation of the statute, however, primarily because it is clearly the most reasonable interpretation, and secondarily, because it is consistent with the requirement to construe exemptions liberally in favor of debtor.

The Court interprets the opening phrase of § 600.5451(3), "If property **that is exempt under this section** is sold, damaged, destroyed, or acquired for public use," (emphasis added), to refer to property *of the type* that is exempt under § 600.5451(1), not to property that is *actually* exempt under § 600.5451(1).

If § 600.5451(3) covered the proceeds only of property that was actually exempt under

---

[49]   Br. in Supp. of Exemption Objections (Docket # 70) at pdf p. 25.

§ 600.5451(1), then § 600.5451(3) would be superfluous. Once an item of property is claimed

exempt under § 600.5451(1), and that exemption is allowed,[50] such property is deemed exempt

**as of the bankruptcy petition date**. *See In re Hamacher*, 535 B.R. 180, 182-84 (Bankr. E.D.

Mich. 2015); *In re Oberlies*, 94 B.R. 916, 918-19 (Bankr. E.D. Mich. 1988); *In re OBrien*, 443

B.R. 117, 130-31 (Bankr. W.D. Mich. 2011). Such exempt property is no longer property of the

bankruptcy estate, effective as of the petition date. Such exempt property cannot be brought back

into the bankruptcy estate because of later, post-petition events. An example of these concepts is

in cases where a bankruptcy debtor owns real property that, as of the petition date, is jointly

owned in a tenancy by the entireties with his non-filing spouse, but the non-filing spouse later

dies, post-petition. In that situation, cases have held that the debtor's interest in the real property

is exempt, and remains exempt, because it was entireties property as of the petition date. The

post-petition death of the non-filing spouse ended the property's entireties status and made the

bankruptcy debtor the sole owner of the real property, by operation of state law, but that did not

terminate the debtor's exemption or bring the real property back into the bankruptcy estate. *See,*

---

[50] The process for the allowance of an exemption is this: first, the debtor files a Schedule C claiming the property as exempt; then second, either no objection to the claimed exemption is filed by the deadline for such objections, or a timely objection is filed but overruled by the Court. When these events have occurred, the exemption is deemed allowed. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 642-43 (1992); 11 U.S.C. § 522(l) ("Unless a party in interest objects, the property claimed as exempt on [Schedule C] is exempt."); Fed. R. Bankr. P. 4003(b) (setting the deadline for a party in interest to object to claimed exemptions). As noted in the text above, once an exemption is allowed, the exempt property is deemed exempt as of the petition date.

The deadline for a party in interest to object to a debtor's claimed exemptions is set by Fed. R. Bankr. P. 4003(b). With certain exceptions not applicable here, the deadline is 30 days after "the later of: • the conclusion of the § 341 meeting of creditors; • the filing of an amendment to the list [of claimed exemptions]; or • the filing of a supplemental schedule." Fed. R. Bankr. P. 4003(b)(1). The rule further provides that "[o]n a party in interest's motion filed before the time to object expires, the court may, for cause, extend the time to file an objection." *Id.*

*e.g.*, *In re Hamacher*, 535 B.R. at 181-84; *In re Alderton*, 179 B.R. 63, 65-66 (Bankr. E.D. Mich. 1995).

It follows that if there is a sale of **exempt** property **after** the petition date, the proceeds of that sale are not property of the bankruptcy estate, any more than the exempt property itself was. It is not necessary — *i.e.*, superfluous — for an exemption statute to say that the sale proceeds of the already-exempt property are exempt.

The property in this case illustrates the point. If the Debtors had not sold their entireties real estate before filing their bankruptcy petition, they could have claimed that real estate as exempt under Mich. Comp. Laws § 600.5451(1)(n) (limited by the possible joint debt exception, discussed below). That exempt real estate would no longer be property of the bankruptcy estate, effective as of the petition date. If the Debtors later sold that exempt real estate, the **proceeds** of such sale of exempt property would not be property of the bankruptcy estate, any more than the exempt property itself was. The "proceeds" exemption in Mich. Comp. Laws § 600.5451(3) would not be necessary to achieve exempt status for the proceeds.

As a result, the Trustee's interpretation of Mich. Comp. Laws § 600.5451(3), that it is limited to the post-petition sale of property that already is actually exempt, would render § 600.5451(3) and its exemption of **proceeds** superfluous. And this is so not only for entireties real estate; it also would be true of the other types of property listed as exempt in Mich. Comp. Laws § 600.5451(1), including property that is exempt up to a specified dollar limit, such as a motor vehicle (§ 600.5451(1)(g)), or a homestead that is not entireties property (§ 600.5451(1)(m)).

This Court must construe Mich. Comp. Laws § 600.5451(3), if possible, in a way that gives effect to that subsection, rather than reading the statute in a way that would make that subsection superfluous. *See Chrysler Corp. v. Comm'r*, 436 F.3d 644, 654-55 (6th Cir. 2006) (citation omitted) (Courts "must construe a statute as a whole and, in so doing, . . . must strive to 'interpret provisions so that other provisions in the statute are not rendered inconsistent, superfluous, or meaningless.'"); *In re Wylie*, 630 B.R. 68, 74 (Bankr. E.D. Mich. 2021), *aff'd. sub nom. Wylie v. Miller*, 650 B.R. 504 (E.D. Mich. 2022) (citation omitted) (Under Michigan law, "'[i]n construing a statute, "effect must be given, if possible, to every word, sentence and section."'").

To have any independent meaning and effect, Mich. Comp. Laws § 600.5451(3) must apply to the ***pre-petition*** sale of property, to the extent such property is of the type that would be exempt as of the bankruptcy petition date but for the sale. And the debtor must have received the proceeds of such pre-petition sale no more than 1 year before the bankruptcy petition date, because Mich. Comp. Laws § 600.5451(3) says that "[a]n exemption under this subsection may be claimed up to 1 year after the receipt of the proceeds by the owner."

In this case, the Debtors meet these requirements. They received the proceeds of the sale of their entireties real estate no earlier than October 9, 2023, and they filed their bankruptcy petition and Schedules C claiming the exemption less than one year later, on September 19, 2014.

The Trustee argues that even if the Debtors' pre-petition sale of their entireties property otherwise qualifies under Mich. Comp. Laws § 600.5451(3), the sale proceeds are not exempt because of the joint debt exception in Mich. Comp. Laws § 600.5451(1)(n). The entireties

exemption in that section "does not apply with regard to a claim based on a joint debt of the husband and wife." Mich. Comp. Laws § 600.5451(1)(n). The Trustee alleges that in October 2023, when the Debtors originally received the proceeds from the sale of their entireties real estate, the Debtors owed joint debts that exceeded the $214,957.92 proceeds amount. And the Trustee alleges that as of the bankruptcy petition date, by which time the Debtors' remaining sale proceeds had been reduced to $122,594.15, the Debtors' joint debt exceeded that amount. For these reasons, the Trustee argues that the Debtors have no exemption in the sale proceeds.

The Court concludes, and the Debtors do not dispute, that the Debtors' exemption of their entireties sale **proceeds** under Mich. Comp. Laws § 600.5451(3) is limited by the joint debt exception applicable to entireties real estate under Mich. Comp. Laws § 600.5451(1)(n). The Court agrees with the Debtors, however, that the relevant date for determining the extent to which the joint debt exception applies is the bankruptcy petition date. As noted above, exemptions are fixed and determined as of the petition date, not as of a date before or after the petition date. This concept applies with respect to the joint debt exception to the entireties exemption. *See, e.g., Oberlies*, 94 B.R. at 918-19 (holding that, for purposes of the joint debt exception to the entireties exemption, the existence and amount of joint debts as of the petition date governs, even if some or all of the joint debts later were settled and waived by the creditors).

The record is clear that as of the petition date, the Debtors' only possible joint debt was a debt owing to Kapitus Servicing, Inc. ("Kapitus"). Kapitus timely filed a proof of claim in the amount of $297,632.74, and asserted that the Debtors were jointly liable for such debt.[51] The

---

[51] Kapitus later filed an amended proof of claim which is designated Claim 21-2 on the Court's claims register.

Debtors filed an objection to the claim, contending that only the Debtor Richard Minc is liable in any amount to Kapitus.[52]  Kapitus then filed an adversary proceeding against both of the Debtors, Adv. No. 25-4010, seeking a determination that the Debtors are jointly liable to Kapitus in the amount of "at least" $297,632.75, plus "additional costs, attorney fees, expenses, and interest," and seeking a determination that such debt is nondischargeable under 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6).[53]

The Debtors have indicated that the Kapitus claim against them is close to being settled, and that the settlement will leave no joint debt owing to Kapitus.  The record does not yet show any settlement, however, and the claim objection and the adversary proceeding remain pending.  In addition, the time for measuring the joint debt exception amount, if any, is the petition date.  The question is what joint debt was there, if any, as of the petition date.  It does not matter, for exemption purposes, whether any joint debt that existed on the petition date later was reduced or eliminated due to a settlement.  *See Oberlies*, 94 B.R. at 918-19.

Currently, it remains to be seen whether the Debtors owed any joint debt to Kapitus as of the bankruptcy petition date, and if so, how much that joint debt was.  To the extent the Debtors are found to have owed a joint debt to Kapitus as of the petition date, their claimed exemptions of the entireties real estate sale proceeds will be disallowed; otherwise the exemptions will be allowed.

---

[52]  The Debtors filed an objection to the filed claims of Kapitus and 17 other creditors on January 7, 2025 (Docket # 33).  The objection was sustained as to all of the creditors except Kapitus, and the claims of all those other creditors were disallowed as to Karen Minc, in the Court's Orders filed January 31, 2025 and February 14, 2025 (Docket ## 42, 48).  Only the joint-debt claim of Kapitus is unresolved.

[53]  *See* Compl., Adv. No. 25-4010 (Docket # 1) at ¶¶ 90-91, 103-04, 121-122, 129-30, pdf pp. 27-28.

There is a separate but related issue that may arise, but which the Court does not yet need to decide. The Debtors have argued that even if their exemption turns out to be limited by some joint debt amount, the non-exempt part of their entireties sale proceeds can only be used by the Trustee to pay joint creditors. And if the Debtors manage to settle with Kapitus in a way that eliminates the liability of Karen Minc, as the Debtors suggest they may do, this case will be left with no joint debt claims for the Trustee to pay. In that event, the Debtors argue, there will be no one to pay the sale proceeds to except the Debtors themselves. In support of their argument, the Debtors cite the following cases: *Oberlies*, 94 B.R. at 923 (holding that trustee may administer tenancy by the entireties property "only for the benefit of joint creditors"); *In re Smith*, 246 B.R. 540, 543 (Bankr. E.D. Mich. 2000) ("The right to administer the entireties property is dependent on the existence of joint debt at the commencement of the case . . . ."); and *Holley v. Corcoran* (*In re Holley*), 661 F. App'x 391, 396 (6th Cir. 2016) (holding that sale proceeds of exempt entireties property may not be used to pay Chapter 7 administrative expenses).

The Trustee disagrees with the Debtors, and argued during the hearing that any non-exempt part of the Debtors' entireties sale proceeds may be used by the Trustee to pay administrative expenses and all allowed claims, not just any joint-debt claims.

The Court expresses no view on this issue at this time. The parties have not fully briefed this issue, and the issue is not yet ripe in any event. It remains to be seen whether there was any debt owed jointly by the Debtors to Kapitus as of the petition date, and if so, what the amount of such joint debt was. If there was no such joint debt as of the petition date, then the entireties sale proceeds will be entirely exempt. In that event, it will not matter whether non-exempt sale proceeds could be used to pay any claims other than those of the joint-debt creditor.

## IV.  Conclusion

For the reasons stated in this Opinion, the Court will enter an order sustaining the Chapter 7 Trustee's Exemption Objections in part and overruling them in part.  The Order will disallow the Debtors' claimed exemptions in part and allow them in part, consistent with this Opinion.

Signed on July 25, 2025



/s/ Thomas J. Tucker
_____
Thomas J. Tucker
United States Bankruptcy Judge

OPINION APPENDIX 1

(FIFO tracing analysis that assumes that the entire beginning balance in the Chase Account on March 24, 2023 was from social security deposits)

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **03/24/23** | **$37,603.02** | | | | | $37,603.02 | $0.00 |
| 3/24/23 thru 03/28/23 | | | | $274.99 | | $37,328.03 | $0.00 |
| 04/03/23 | | | $1,675.84 | | | $37,328.03 | $1,675.84 |
| 4/3/23 thru 04/11/23 | | | | $8,550.24 | | $28,777.79 | $1,675.84 |
| 04/12/23 | | $1,503.00 | | | | $30,280.79 | $1,675.84 |
| 4/12/23 thru 04/17/23 | | | | $268.11 | | $30,012.68 | $1,675.84 |
| 04/18/23 | | | $4,333.33 | | | $30,012.68 | $6,009.17 |
| 4/18/23 thru 04/24/23 | | | | $2,741.69 | | $27,270.99 | $6,009.17 |
| **04/25/23** | **$33,280.16** | | | | | | |
| Total w/drawals this month | | | | $11,835.03 | $0.00 | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **04/26/23** | **$33,280.16** | | | | | $27,270.99 | $6,009.17 |
| 4/26/23 thru 05/01/23 | | | | $1,143.66 | | $26,127.33 | $6,009.17 |
| 05/02/23 | | | $2,333.33 | | | $26,127.33 | $8,342.50 |
| 5/2/23 thru 05/09/23 | | | | $5,568.44 | | $20,558.89 | $8,342.50 |
| 05/10/23 | | $1,503.00 | | | | $22,061.89 | $8,342.50 |
| 5/12/23 thru 05/16/23 | | | | $692.01 | | $21,369.88 | $8,342.50 |
| 05/17/23 | | | $3,433.33 | | | $21,369.88 | $11,775.83 |
| 5/18/23 thru 05/23/23 | | | | $3,797.83 | | $17,572.05 | $11,775.83 |
| **05/23/23** | **$29,347.88** | | | | | | |
| Total w/drawals this month | | | | $11,201.94 | | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| 05/24/23 | $29,347.88 | | | | | $17,572.05 | $11,775.83 |
| unknown | | $1,503.00 | $0.14 | | | $19,075.05 | $11,775.97 |
| unknown | | | | $6,472.57 | | $12,602.48 | $11,775.97 |
| 06/26/23 | $24,378.45 | | | | | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| 06/27/23 | $24,378.45 | | | | | $12,602.48 | $11,775.97 |
| 6/27/23 thru 06/30/23 | | | | $324.16 | | $12,278.32 | $11,775.97 |
| 07/12/23 | | $1,503.00 | | | | $13,781.32 | $11,775.97 |
| 7/17/23 thru 07/26/23 | | | | $807.09 | | $12,974.23 | $11,775.97 |
| 07/26/23 | | | $0.20 | | | $12,974.23 | $11,776.17 |
| 07/26/23 | $24,750.40 | | | | | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| 07/27/23 | $24,750.40 | | | | | $12,974.23 | $11,776.17 |
| 08/09/23 | | $1,503.00 | | | | $14,477.23 | $11,776.17 |
| 8/16/23 thru 08/23/23 | | | | $544.95 | | $13,932.28 | $11,776.17 |
| 08/23/23 | | | $0.19 | | | $13,932.28 | $11,776.36 |
| 08/23/23 | $25,708.64 | | | | | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| 08/24/23 | $25,708.64 | | | | | $13,932.28 | $11,776.36 |
| 08/28/23 | | | | $262.14 | | $13,670.14 | $11,776.36 |
| 09/13/23 | | $1,503.00 | | | | $15,173.14 | $11,776.36 |
| 9/15/23 thru 09/26/23 | | | | $807.09 | | $14,366.05 | $11,776.36 |
| 09/26/23 | | | $0.24 | | | $14,366.05 | $11,776.60 |
| 09/26/23 | $26,142.65 | | | | | | |

Total w/drawals
to date     $32,254.97

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **09/27/23** | **$26,142.65** | | | | | $14,366.05 | $11,776.60 |
| 10/11/23 | | $1,503.00 | | | | $15,869.05 | $11,776.60 |
| 10/13/23 | | $135.00 | | | | $16,004.05 | |
| 10/16/23 | | $9.00 | | | | $16,013.05 | |
| 10/25/23 | | | $0.21 | | | $16,013.05 | $11,776.81 |
| 9/29/23 thru 10/23/23 | | | | $707.39 | | $15,305.66 | $11,776.81 |
| **10/25/23** | **$27,082.47** | | | | | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **10/26/23** | **$27,082.47** | | | | | $15,305.66 | $11,776.81 |
| 11/08/23 | | $1,519.00 | | | | | |
| 10/26/23 thru 11/20/23 | | | | $623.17 | | | |
| 11/24/23 | | | $0.22 | | | $16,201.49 | $11,777.03 |
| unknown | | | $100.00 | $283.92 | | $15,917.57 | $11,877.03 |
| **11/24/23** | **$27,794.60** | | | | | | |

**Total w/drawals
to date**     **$33,869.45**

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **11/25/23** | **$27,794.60** | | | | | $15,917.57 | $11,877.03 |
| 11/28/23 | | | | $262.14 | | | |
| 12/13/23 | | $1,519.00 | | | | | |
| 12/18/23 thru 12/26/23 | | | | $544.95 | | $16,629.48 | $11,877.03 |
| 12/26/23 | | | $0.24 | | | $16,629.48 | $11,877.27 |
| **12/26/23** | **$28,506.75** | | | | | | |

**Total w/drawals**

**to date**      $34,676.54

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **12/27/23** | **$28,506.75** | | | | | $16,629.48 | $11,877.27 |
| 12/27/23 | | | | $262.14 | | | |
| 12/13/23 | | $1,562.00 | | | | | |
| 1/16/24 thru 01/23/24 | | | | $544.95 | | | |
| 01/25/24 | | | $0.23 | | | $17,384.39 | $11,877.50 |
| **01/25/24** | **$29,261.89** | | | | | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **01/26/24** | **$29,261.89** | | | | | $17,384.39 | $11,877.50 |
| 02/14/24 | | $1,562.00 | | | | | |
| 2/16/24 thru 02/23/24 | | | | $544.95 | | | |
| 02/25/24 | | | $0.26 | | | $18,401.44 | $11,877.76 |

**Total w/drawals to date**     $36,028.58

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **02/27/24** | **$30,279.20** | | | | | $18,401.44 | $11,877.76 |
| 03/13/24 | | $1,562.00 | | | | | |
| 3/18/24 thru 03/25/24 | | | | $544.95 | | | |
| 03/25/24 | | | $0.23 | | | $19,418.49 | $11,877.99 |
| **03/25/24** | **$31,296.48** | | | | | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **03/26/24** | **$31,296.48** | | | | | $19,418.49 | $11,877.99 |
| unknown | | $1,562.00 | | | | | |
| unknown | | | | $544.95 | | | |
| unknown | | | | | | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| 04/23/24 | $32,313.76 | | | | | | |

**Total w/drawals to date** — $37,118.48

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **04/24/24** | **$32,313.76** | | | | | $20,435.54 | $11,878.24 |
| 05/08/24 | | | $1,562.00 | | | | |
| 5/16/24 thru 05/23/24 | | | | $484.54 | 60.41 | | |
| 05/23/24 | | | $0.27 | | | $21,513.00 | $11,818.10 |
| **05/23/24** | **$33,331.10** | | | | | | |

**Total w/drawals to date** — $37,603.02   60.41

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **05/24/24** | **$33,331.10** | | | | | $21,513.00 | $11,818.10 |
| 06/12/24 | | | $1,562.00 | | | | |
| 6/17/24 thru 06/24/24 | | | | | $544.95 | | |
| 06/26/24 | | | $0.31 | | | $23,075.00 | $11,273.46 |
| 06/26/24 | $34,348.46 | | | | | | |

**Total w/drawals to date** — $37,603.02   605.36

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **06/27/24** | **$34,348.46** | | | | | $23,075.00 | $11,273.46 |
| 07/10/24 | | | $1,562.00 | | | | |
| 7/17/24 thru 07/23/24 | | | | | $544.95 | $24,637.00 | $10,728.51 |
| 07/24/24 | | | $0.27 | | | $24,637.00 | $10,728.78 |

**Total w/drawals to date** — $37,603.02   $1,150.31

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| 07/25/24 | $35,365.78 | | | | | $24,637.00 | $10,728.78 |
| 08/14/24 | | $1,562.00 | | | | | |
| 8/15/24 thru 08/23/24 | | | | $19.42 | $525.53 | | |
| 08/23/24 | | | $0.29 | | | $26,179.58 | $10,203.54 |
| Total w/drawals to date | | | | $37,622.44 | $1,675.84 | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| 08/24/24 | $36,383.12 | | | | | $26,179.58 | $10,203.54 |
| 09/11/24 | | $1,562.00 | | | | $27,741.58 | $10,203.54 |
| unknown, but before 9/19/24 this is based on pet. date balance per Schedjule A/B | | | | $155.66 | | $27,585.92 | $10,203.54 |
| Total w/drawals to date | | | | $37,778.10 | $1,675.84 | | |
| or, if use petition date account balance T/ee says and d/ors don't dispute ($37,537.41) | | | | $407.71 | | $27,333.87 | $10,203.54 |
| Total w/drawals to date | | | | $38,030.15 | $1,675.84 | | |

# OPINION APPENDIX 2

(FIFO tracing analysis that assumes that the entire beginning balance in the Chase Account on March 24, 2023 was from sources other than social security)

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **03/24/23** | **$37,603.02** | | | | | $0.00 | $37,603.02 |
| 3/24/23 thru 03/28/23 | | | | | $274.99 | $0.00 | $37,328.03 |
| 04/03/23 | | | $1,675.84 | | | $0.00 | $39,003.87 |
| 4/3/23 thru 04/11/23 | | | | | $8,550.24 | $0.00 | $30,453.63 |
| 04/12/23 | | $1,503.00 | | | | $1,503.00 | $30,453.63 |
| 4/12/23 thru 04/17/23 | | | | | $268.11 | $1,503.00 | $30,185.52 |
| 04/18/23 | | | $4,333.33 | | | $1,503.00 | $34,518.85 |
| 4/18/23 thru 04/24/23 | | | | | $2,741.69 | $1,503.00 | $31,777.16 |
| **04/25/23** | **$33,280.16** | | | | | | |
| Total w/drawals this month | | | | $0.00 | $11,835.03 | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **04/26/23** | **$33,280.16** | | | | | $1,503.00 | $31,777.16 |
| 4/26/23 thru 05/01/23 | | | | | $1,143.66 | $1,503.00 | $30,633.50 |
| 05/02/23 | | | $2,333.33 | | | $1,503.00 | $32,966.83 |
| 5/2/23 thru 05/09/23 | | | | | $5,568.44 | $1,503.00 | $27,398.39 |
| 05/10/23 | | $1,503.00 | | | | $3,006.00 | $27,398.39 |
| 5/12/23 thru 05/16/23 | | | | | $692.01 | $3,006.00 | $26,706.38 |
| 05/17/23 | | | $3,433.33 | | | $3,006.00 | $30,139.71 |
| 5/18/23 thru 05/23/23 | | | | | $3,797.83 | $3,006.00 | $26,341.88 |
| **05/23/23** | **$29,347.88** | | | | | | |
| Total w/drawals this month | | | | $0.00 | $11,201.94 | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **05/24/23** | **$29,347.88** | | | | | $3,006.00 | $26,341.88 |
| unknown | | $1,503.00 | $0.14 | | | $4,509.00 | $26,342.02 |
| unknown | | | | | $6,472.57 | $4,509.00 | $19,869.45 |
| **06/26/23** | **$24,378.45** | | | | | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **06/27/23** | **$24,378.45** | | | | | $4,509.00 | $19,869.45 |
| 6/27/23 thru 06/30/23 | | | | | $324.16 | $4,509.00 | $19,545.29 |
| 07/12/23 | | $1,503.00 | | | | $6,012.00 | $19,545.29 |
| 7/17/23 thru 07/26/23 | | | | | $807.09 | $6,012.00 | $18,738.20 |
| 07/26/23 | | | $0.20 | | | $6,012.00 | $18,738.40 |
| **07/26/23** | **$24,750.40** | | | | | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **07/27/23** | **$24,750.40** | | | | | $6,012.00 | $18,738.40 |
| 08/09/23 | | $1,503.00 | | | | $7,515.00 | $18,738.40 |
| 8/16/23 thru 08/23/23 | | | | | $544.95 | $7,515.00 | $18,193.45 |
| 08/23/23 | | | $0.19 | | | $7,515.00 | $18,193.64 |
| **08/23/23** | **$25,708.64** | | | | | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **08/24/23** | **$25,708.64** | | | | | $7,515.00 | $18,193.64 |
| 08/28/23 | | | | | $262.14 | $7,515.00 | $17,931.50 |
| 09/13/23 | | $1,503.00 | | | | $9,018.00 | $17,931.50 |
| 9/15/23 thru 09/26/23 | | | | | $807.09 | $9,018.00 | $17,124.41 |
| 09/26/23 | | | $0.24 | | | $9,018.00 | $17,124.65 |
| **09/26/23** | **$26,142.65** | | | | | | |

**Total w/drawals to date**     $0.00     $32,254.97

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **09/27/23** | **$26,142.65** | | | | | $9,018.00 | $17,124.65 |
| 10/11/23 | | $1,503.00 | | | | $10,521.00 | $17,124.65 |
| 10/13/23 | | $135.00 | | | | $10,656.00 | |
| 10/16/23 | | $9.00 | | | | $10,665.00 | |
| 10/25/23 | | | $0.21 | | | $10,665.00 | $17,124.86 |
| 9/29/23 thru 10/23/23 | | | | | $707.39 | $10,665.00 | $16,417.47 |
| **10/25/23** | **$27,082.47** | | | | | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **10/26/23** | **$27,082.47** | | | | | $10,665.00 | $16,417.47 |
| 11/08/23 | | $1,519.00 | | | | | |
| 10/26/23 thru 11/20/23 | | | | | $623.17 | | |
| 11/24/23 | | | $0.22 | | | $12,184.00 | $15,794.52 |
| unknown | | | $100.00 | | $283.92 | $12,184.00 | $15,610.60 |
| **11/24/23** | **$27,794.60** | | | | | | |

**Total w/drawals to date**     $0.00     **$33,869.45**

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **11/25/23** | **$27,794.60** | | | | | $12,184.00 | $15,610.60 |
| 11/28/23 | | | | | $262.14 | | |
| 12/13/23 | | $1,519.00 | | | | | |
| 12/18/23 thru 12/26/23 | | | | | $544.95 | $13,703.00 | $14,803.51 |
| 12/26/23 | | | $0.24 | | | $13,703.00 | $14,803.75 |
| **12/26/23** | **$28,506.75** | | | | | | |

**Total w/drawals**

| | | | | Withdrawal: Social Security | Withdrawal: Other | | |
|---|---|---|---|---|---|---|---|
| to date | | | | $0.00 | **$34,676.54** | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **12/27/23** | **$28,506.75** | | | | | $13,703.00 | $14,803.75 |
| 12/27/23 | | | | | $262.14 | | |
| 12/13/23 | | $1,562.00 | | | | | |
| 1/16/24 thru 01/23/24 | | | | | $544.95 | | |
| 01/25/24 | | | **$0.23** | | | $15,265.00 | $13,996.89 |
| **01/25/24** | **$29,261.89** | | | | | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **01/26/24** | **$29,261.89** | | | | | $15,265.00 | $13,996.89 |
| 02/14/24 | | $1,562.00 | | | | | |
| 2/16/24 thru 02/23/24 | | | | | $544.95 | | |
| 02/25/24 | | | **$0.26** | | | $16,827.00 | $13,452.20 |

| | | | | Withdrawal: Social Security | Withdrawal: Other | | |
|---|---|---|---|---|---|---|---|
| Total w/drawals to date | | | | $0.00 | $36,028.58 | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **02/27/24** | **$30,279.20** | | | | | $16,827.00 | $13,452.20 |
| 03/13/24 | | $1,562.00 | | | | | |
| 3/18/24 thru 03/25/24 | | | | | $544.95 | | |
| 03/25/24 | | | **$0.23** | | | $18,389.00 | $12,907.48 |
| **03/25/24** | **$31,296.48** | | | | | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **03/26/24** | **$31,296.48** | | | | | $18,389.00 | $12,907.48 |
| unknown | | $1,562.00 | | | | | |
| unknown | | | | | $544.95 | | |
| unknown | | | $0.95 | | | $1,825.00 | $12,362.75 |

| | 04/23/24 | **$32,313.76** | | | | | | |

**Total w/drawals to date** $37,118.48

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **04/24/24** | **$32,313.76** | | | | | $19,951.00 | $12,362.78 |
| 05/08/24 | | | $1,562.00 | | | | |
| 5/16/24 thru 05/23/24 | | | | | $544.95 | | |
| 05/23/24 | | | $0.27 | | | $21,513.00 | $11,818.10 |
| **05/23/24** | **$33,331.10** | | | | | | |

**Total w/drawals to date** $0.00 $37,663.43

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **05/24/24** | **$33,331.10** | | | | | $21,513.00 | $11,818.10 |
| 06/12/24 | | | $1,562.00 | | | | |
| 6/17/24 thru 06/24/24 | | | | | $544.95 | | |
| 06/26/24 | | | $0.31 | | | $23,075.00 | $11,273.46 |
| 06/26/24 | $34,348.46 | | | | | | |

**Total w/drawals to date** $38,208.38

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **06/27/24** | **$34,348.46** | | | | | $23,075.00 | $11,273.46 |
| 07/10/24 | | | $1,562.00 | | | | |
| 7/17/24 thru 07/23/24 | | | | | $544.95 | $24,637.00 | $10,728.51 |
| 07/24/24 | | | $0.27 | | | $24,637.00 | $10,728.78 |

**Total w/drawals to date** $0.00 $38,753.33

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **07/25/24** | **$35,365.78** | | | | | $24,637.00 | $10,728.78 |
| 08/14/24 | | $1,562.00 | | | | | |
| 8/15/24 thru 08/23/24 | | | | $19.42 | $525.53 | | |
| 08/23/24 | | | $0.29 | | | $26,179.58 | $10,203.54 |
| **Total w/drawals to date** | | | | $19.42 | $39,278.86 | | |

| Date | Account Balance | Deposit: Social Security | Deposit: Other | Withdrawal: Social Security | Withdrawal: Other | Resulting balance: Social Security | Resulting balance: Other |
|---|---|---|---|---|---|---|---|
| **08/24/24** | **$36,383.12** | | | | | $26,179.58 | $10,203.54 |
| 09/11/24 | | $1,562.00 | | | | $27,741.58 | $10,203.54 |
| unknown, but before 9/19/24 | | | | $155.66 | | **$27,585.92** | **$10,203.54** |
| **Total w/drawals to date** | | | | $175.08 | $39,278.86 | | |
| or, if use petition date account balance T/ee says and d/ors don't dispute ($37,537.41) | | | | $407.71 | | **$27,333.87** | **$10,203.54** |
| **Total w/drawals to date** | | | | $427.13 | $39,278.86 | | |